UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Rhonda D. Hamilton, | ) | Civil Action  No. 5:13-02577-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"),

denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties'

submissions and the applicable law, the court *reverses* the Commissioner's decision and *remands*

it for further administrative proceedings, as discussed herein.

I.   Relevant Background

A.   Procedural History

On October 4, 2010, Plaintiff filed applications for DIB and SSI alleging a disability

onset date of August 3, 2008. Tr. 156-69.[1] After being denied both initially and on

reconsideration, Tr. 66-69, 70-73, 74-81, on June 24, 2011, Plaintiff requested a hearing before

---

[1] "Tr." is an abbreviation for "Transcript of the Record" made before the Social Security
Administration in connection with Plaintiff's claim for DIB and SSI. It is located on this court's
docket at ECF No. 18 and 19.

an Administrative Law Judge ("ALJ"), Tr. 91-100. On April 4, 2012, the ALJ conducted a hearing, taking testimony from Plaintiff. Tr. 34-65. The ALJ issued a decision on May 16, 2012, denying Plaintiff's claims. Tr. 17-28. The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. Tr. 1-4. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on September 20, 2013. ECF No. 1.

### B. Plaintiff's Background

Plaintiff was born on October 4, 1964, and was 47 years old at the time of her hearing before the ALJ. Tr. 42, 156. She completed the eleventh grade and worked as a cook, dietary aide, and cashier. Tr. 43-44, 224.  Plaintiff quit working full time on August 3, 2008, and continued working part time until February of 2011. Tr. 44. In her Disability Report, Plaintiff maintains that several impairments including asthma, high blood pressure, arthritis, migraines, depression, and back problems limited her ability to work. Tr. 215.

### C. The Administrative Hearing

#### 1. Plaintiff's Testimony

Plaintiff and her counsel appeared at her administrative hearing on April 4, 2012. *See* Tr. 34-65. Plaintiff was 47 years old, five feet three inches tall, and weighed 175 pounds at the time of the hearing. Tr. 42. Plaintiff testified that she was single and has four children over the age of 18. Tr. 42. Plaintiff testified that she lives in a house, and sometimes her son stays with her. Tr. 43. Plaintiff testified that she has a driver's license but only drives about twice a month. Tr. 43. Plaintiff testified that her daughter drives her most of the time and drove her to the hearing. Tr. 43.

Plaintiff completed the eleventh grade, and she testified that she "can write okay [but] can't read that good."[2] Tr. 43-44. Plaintiff testified that she last worked in February of 2011 at McDonalds as a cook on the grill. Tr. 44. Plaintiff testified that she worked at McDonalds for about two years but also testified that she worked from 2007 to 2011. Tr. 44. Prior to working at McDonalds, Plaintiff testified that from 2001 to 2006, she worked at Self Region where she served food in the cafeteria. Tr. 45. Plaintiff testified that she worked at Little Cricket as a cashier from 1993 to 2000. *Id.*

Plaintiff testified that she is unable to work because of her leg, feet, and ankles that "stay swollen." Tr. 45. Further, Plaintiff testified that her "knee and [her] back hurt [her] all the time, and [her] hips." Additionally, Plaintiff testified that she cannot stand or sit for long periods of time. Tr. 45. Plaintiff testified that she gets migraine headaches three to four times a month. Tr. 46. Plaintiff testified that the medication she takes makes her drowsy, and it takes a day for the migraines to go away. Tr. 46. Plaintiff testified that she would rate her pain level from her headaches as a 10 on a ten-point scale. Tr. 50. Plaintiff testified that she has to lie in the dark and sometimes has thrown up as a result of her headaches. Tr. 50. Plaintiff testified that she has asthma, bronchitis, and was diagnosed with COPD after she went to the hospital in July of 2011. Tr. 46.

Plaintiff testified that she has constant pain in her lower back and that her back pain would be a level eight or nine on a ten-point scale. Tr. 47. Plaintiff testified that she experiences stiffness in her back and a "sharp burning sensation in it." Tr. 47. Plaintiff testified that she experiences pain in her right knee but "it's not as bad as [her] back" as long as she does not "bend or stand on it too long." Tr. 47. Plaintiff testified that the pain is always there, and her

---

[2] In her Disability Report, Plaintiff indicated she did not attend special education classes. Tr. 216.

knee stays swollen all the time. Tr. 47. Plaintiff testified that her knee pain would be a level five on a ten-point scale. Tr. 48. Plaintiff testified that she has to put a lot of pressure on her left leg which has caused her left knee and ankle to swell. Tr. 48. Plaintiff testified that the swelling does not go away even after she elevates her leg. Tr. 48. Plaintiff testified that she experiences pain in her left leg when she tries to walk and put pressure on it. Tr. 48. Plaintiff testified that she would sometimes rate the left leg pain level as a ten on a ten-point scale and that she would "be screaming." *Id.* Plaintiff testified that she has arthritis in both hips. *Id.* Plaintiff testified that she cannot sit for long periods of time because she has to put pressure down on her hips. Tr. 49. Plaintiff testified that she would rate the hip pain at a level eight on a ten-point scale. Tr. 49.

Plaintiff testified that she has two inhalers and uses a machine for breathing treatments two to three times a day. Tr. 49. Plaintiff testified that she uses one inhaler once a day and takes "two pulls," and she uses the other inhaler three times a day and takes "three pulls." Tr. 50. Plaintiff testified that she has stayed overnight in the hospital for her chronic bronchitis and asthma. Tr. 49. Plaintiff testified that she stayed in the hospital for four days in July of 2011 when she was diagnosed with COPD. Tr. 50. Plaintiff testified that she has been treated for depression and takes Zoloft, which helps. Tr. 51. Plaintiff testified that she has never been hospitalized for depression. Tr. 51.

Plaintiff testified that she can sit for approximately 15 minutes before she has to stand up, and she can stand for about five to ten minutes before she has to sit down. Tr. 51. Plaintiff testified that she can walk approximately 40 feet. Tr. 51. Plaintiff testified that she could lift and carry about three pounds. Tr. 51-52. Plaintiff testified that she would not be able to reach down and pick up a pencil off the floor or kneel, crouch, or crawl. Tr. 52. Plaintiff testified that she does not cook, do dishes, vacuum, sweep, or mop—that her daughter does all these chores for

her. Tr. 52. Plaintiff testified that she does not pay bills but can count change up to a certain amount. Tr. 52. Plaintiff testified that her daughter does her grocery shopping. Tr. 52. Plaintiff testified that she is able to attend church but does not go out to eat or visit with friends. Tr. 52-53.

Upon questioning by her attorney, Plaintiff testified that she is only able to attend church once a month. Tr. 53. Plaintiff testified that her daughter comes to her home at 1:00 and leaves at approximately 6:00 every day. Tr. 53. Plaintiff testified that she sleeps all the time as a side effect from her medication. Tr. 53. Plaintiff testified that she takes medicine for high blood pressure which is supposed to help with the swelling. Tr. 53. Plaintiff testified that she elevates her legs two to three times a day by sitting in a recliner. Tr. 53-54. Plaintiff testified that she has problems sleeping at night due to the pain in her back and hips and naps occasionally during the day. Tr. 54. Plaintiff testified that she "cat naps" about three times a day for thirty minutes. Tr. 54. Plaintiff testified that her daughter changes her bed and helps her get in and out of the tub. Tr. 54-55. Plaintiff testified that she is able to dress herself in certain types of clothes. Tr. 54-55. Plaintiff testified that she is unable to wash her hair because it hurts to lift her arm over her head. Tr. 55.

The ALJ then began to question Plaintiff about the condition of her left arm which was not discussed earlier. Tr. 55. When asked what is wrong with her left arm, Plaintiff testified that her "rotor cup (sic) got messed up when [she] was working at the hospital." Tr. 55. Plaintiff testified that she did not have surgery on her arm. Tr. 56. Plaintiff testified that her arm does not bother her as long as she does not lift it above her head and rated the pain in her left arm at a level five on a ten-point scale. Tr. 56.

Plaintiff's attorney resumed questioning of Plaintiff, and Plaintiff testified that when she worked at McDonalds she was working three to four days per week. Tr. 57. Plaintiff testified that she was not working more because she had trouble standing up for a long period of time with her back and hip condition, and "the heat was making [her] have constant asthma attacks." *Id.* Plaintiff testified that she worked part-time for about two to three years and went from working full-time to part-time because of her ankles, knee, hips, back, and migraines. Tr. 57. Plaintiff testified that she was missing too many days of work. Tr. 57. Plaintiff testified that she had a cane with her at the hearing and that she had been using a cane for about a month to help support her legs. Tr. 58. Although no one told her to get a cane, Plaintiff testified that Dr. Alberta knows she has a cane, and she sees Dr. Alberta more than anyone else.[3] Tr. 58.

### 2. Vocational Expert Testimony

Vocational Expert ("VE"), Dennis Hecker, also testified at the administrative hearing. Tr. 59-65.  The VE stated that Plaintiff's past relevant work ("PRW") as a cashier was classified by the Dictionary of Occupational Titles ("DOT") as light-skilled work, with an SVP [specific vocational preparation] of two. Tr. 60. The VE stated that Plaintiff's PRW as a food service worker was classified by the DOT as medium-skilled work, with an SVP of two. Tr. 60. The VE stated that Plaintiff's PRW as a part-time grill cook was classified by the DOT as medium-skilled work, with an SVP of five. Tr. 60. The VE testified that there would be no transferable skills. Tr. 60.

The ALJ posed a hypothetical question regarding an individual who was the same age as Plaintiff with the same education and work experience who "would be limited to light work with

---

[3] The undersigned has reviewed all of Plaintiff's medical records, and none indicate Plaintiff has seen a Dr. Alberta. However, in a Disability Report, Form SSA-3441, Plaintiff indicates that she sees Dr. Dahlberg on a regular basis. Tr. 260. Further, Dr. Dahlberg is listed as Plaintiff's physician on a form indicating the name, dosage, and reason for Plaintiff taking prescription medications. Tr. 267.

frequent climbing of stairs and ramps, no climbing of ladders, ropes or scaffolds. Frequent balancing, occasional stopping, no kneeling, crouching or crawling. They would need to avoid concentrated exposure to fumes, odors, dust, gas, poor ventilation, machinery, and heights and extreme heat. They would further be limited to no overhead lifting or work with the left upper extremity." Tr. 60. The VE found that a person with such limitations would be unable to perform Plaintiff's PRW. Tr. 60-61. The ALJ then asked whether there were other jobs that the hypothetical individual could perform. Tr. 60.

The VE identified the following other jobs that would be available: (1) packer; unskilled, light exertional level; DOT number 753.687-038; 676,000 jobs nationally and 9,800 positions in the state economy; (2) assembler; light exertional level, unskilled; DOT number 706.684-022; 229,000 in the national economy and 2,700 positions in the state economy; and (3) marker pricer; unskilled, SVP: 2; light exertional level; DOT number 209.587-034; 1,700,000 positions in the national economy and 23,000 jobs in the state economy. Tr. 61.

The ALJ then asked the VE to consider the first hypothetical except the individual "would be limited to sedentary work and add to it limited to simple routine, repetitive tasks not performed at fast paced production environment, involving only simple instructions and decisions, and relatively few workplace changes." Tr. 61-62. The VE found that a person with such limitations would be unable to perform Plaintiff's PRW. Tr. 62. When asked if there were other jobs available, the VE identified the following other jobs that would be available: (1) sedentary sorter; DOT number 521.687-086; 410,000 jobs nationally and 8,200 positions in the state economy; (2) assembler; DOT number 739.684-094; 229,000 in the national economy and 2,700 positions in the state economy; and (3) surveillance monitor; DOT number 379.367-010; 79,000 positions in the national economy and 790 jobs in the state economy. Tr. 62.

The ALJ then asked the VE to consider hypothetical two and "[a]dd to it due to symptomology the hypothetical individual would be off task 20 percent of the workday and would miss four days per month." Tr. 62. The VE found that a person with such limitations would be unable to perform Plaintiff's PRW. Tr. 62.When asked whether there would be other work that the individual could perform under the third hypothetical the VE responded, "no." Tr. 62.

Plaintiff's counsel asked the VE to return to hypothetical two but "add to that the restriction that the individual's going to have to elevate their legs and let's just say one time during the day for at least 30 minutes at a time, and they would need to be elevated waist level." Tr. 62-63. The VE responded that there would be work for an individual in a scheduled job but no work for the individual in an unscheduled job. Tr. 63. The VE testified that there would be no work for an individual if the "total of sit, stand, walk is less than eight hours in an eight hour day." Tr. 63.

II. Discussion

A. The ALJ's Findings

In his May 16, 2012 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

2.    The claimant has not engaged in substantial gainful activity since August 3, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: bilateral degenerative joint disease of the knees, degenerative disc disease of the lumbar spine, and asthma (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can frequently climb stairs and ramps and balance. The claimant can occasionally stoop, but may never kneel, crouch, crawl, or climb ladders, ropes or scaffolds. In addition, the claimant must avoid concentrated exposure to machinery, heights, fumes, odors, dusts, gases, poor ventilation, and extreme heat. The claimant must not lift overhead with her left upper extremity. Furthermore, the claimant may only perform jobs requiring no more than simple routine, repetitive tasks, not performed in a fast paced production environment, involving only simple work related instructions and decisions and relatively few work place changes.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on October 4, 1964 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from August 3, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

B.  Legal Framework

    1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing past relevant work ("PRW"); and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*,

*Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.    Analysis

Plaintiff argues that the ALJ erred by: (1) failing to consider the various factors set forth in 20 C.F.R. § 404.1527(d) and 20 C.F.R. § 416.927(d)[5] in evaluating the opinion of the treating physician; (2) failing to consider Plaintiff's obesity as required by Social Security Ruling 02-1p: "Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity;" (3) mischaracterizing Plaintiff's current work status and relying on said mischaracterization in denying Plaintiff's claim; and (4) disregarding or diminishing a number of severe impairments. Pl's Br., ECF No.

---

[5] Although Plaintiff cited to section d, the applicable section is c pursuant to a 2012 revision. *See* 77 FR 10651-01, 2011 WL 7404303.

21. The Commissioner contends that substantial evidence in the record supports the ALJ's decision on all issues. Def. Br., ECF No. 22.

### 1. Treating Physician Opinion

Plaintiff asserts that the "ALJ did not properly apply the applicable factors in 20 C.F.R. §§404.1527(d) and 416.927(d) [and] failed to give proper weight to the opinion of Jason Dahlberg, M.D." Pl.'s Br., ECF No. 21 at 4. The Commissioner argues that the ALJ noted but discounted Dr. Dahlberg's medical opinions, and this did not constitute reversible error. Def.'s Br. 10, ECF No. 22 at 17-20.

If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96–2p; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig v. Chater,* 76 F.3d 585, 590 (4th Cir. 1996). The Commissioner typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart,* 434 F.3d 650, 654 (4th Cir. 2005); 20 C.F.R. §§ 404.1527(c), 416.927(c). The rationale for the general rule affording opinions of treating physicians greater weight is "because the treating physician has necessarily examined the

applicant and has a treatment relationship with the applicant." *Johnson,* 434 F.3d at 654 (quoting *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir. 2001)).

Here, the ALJ noted Dr. Dahlberg's findings from a Physical Residual Functional Capacity Questionnaire. Tr. 25. Specifically, the ALJ found: "Dr. Jason Dahlberg opined that [Plaintiff] could perform sedentary work with differing postural limitations and found that [Plaintiff] would likely be absent from work more than 4 days a month. (Exhibit 8F)." *Id.* However, the ALJ did not give these determinations controlling weight and held: "The [ALJ] gives this opinion partial weight only to the extent that it coincides with the above-listed residual functional capacity." *Id.* In a Physical Residual Functional Capacity Questionnaire dated February 16, 2011, Dr. Dahlberg diagnosed Plaintiff with a herniated disc and asthma and assigned Plaintiff a "poor" prognosis. Tr. 718. Further, Dr. Dahlberg found that Plaintiff's pain or other symptoms would "frequently" interfere with attention and concentration needed to perform simple work tasks. *Id.* Additionally, Dr. Dahlberg found Plaintiff is unable to walk a full city block without needing rest and could sit for 30 minutes at a time and stand for one hour at a time. *Id.* Dr. Dahlberg indicated that Plaintiff could stand/walk for about two hours and sit for about four hours during an eight-hour work day, could rarely lift 20-10 pounds, and could occasionally lift less than 10 pounds. *Id.* Dr. Dahlberg also noted Plaintiff was likely to have good days and bad days and would likely be absent from work more than four days each month. Tr. 719. Finally, Dr. Dahlberg identified depression as a psychological condition affecting Plaintiff's physical condition. *Id.* Dr. Dahlberg noted that the earliest date the diagnosis and limitations applied was October 2010. *Id.*

Plaintiff asserts that her treating physician did not opine that Plaintiff was capable of performing sedentary work, Pl.'s Br. 5, ECF No. 21, while the Commissioner argues that the

ALJ's used the term "sedentary work" as shorthand "because the ALJ acknowledged that Dr. Dahlberg suggested Plaintiff had limitations that, if true, would have prevented her from performing substantial gainful activity." Def. Br. 19, ECF No. 22. Section 404.1567 does not indicate sitting and standing abilities in defining sedentary work. Instead, sedentary work is work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). However, the restrictions assigned by Plaintiff's treating physician could eliminate sedentary work because of Plaintiff's pain or other symptoms that would "frequently" interfere with attention and concentration and Plaintiff's ability to sit for only four hours during an eight-hour work day. *See Kneece v. Colvin*, No. 5:12-2637-TMC, 2014 WL 368586, at *10 (D.S.C. Feb. 3, 2014) (where the VE would have concluded that Plaintiff was limited to less than sedentary work based in part on Plaintiff's 6-hour sitting restriction).

Though the ALJ was not required to assign controlling weight to Dr. Dahlberg's opinion, the ALJ was required consider the medical evidence under the five factors outlined in 20 C.F.R. § 404.1527(c). *See e.g., Johnson*, 434 F.3d at 654 (finding courts evaluate and weigh medical opinions pursuant to the non-exclusive list in 20 C.F.R. § 404.1527); *Vanartsdalen v. Colvin*, No. 5:12-2948-MGL-KDW, 2014 WL 798409, at *10 (D.S.C. Feb. 27, 2014) ("Where the opinions of the treating physician are not given controlling weight, the Commissioner is to evaluate each opinion in light of a series of enumerated factors, including the length of treatment, the nature of the treatment provided, the supportability of the opinion, the consistency of the opinion, and

whether the treating physician is specialized."); *Taylor v. Astrue*, No. 4:11-CV-00315, 2012 WL 4479278, at *4 (D.S.C. Sept. 26, 2012) ("If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6)."). The ALJ's analysis is clearly inconsistent with the mandates of the Treating Physician Rule because the ALJ fails to address the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927.  Accordingly, the undersigned finds that remand for further consideration of the record is appropriate. The ALJ should fully discuss all aspects of Dr. Dahlberg's opinion and discuss the weight attributed to it based on the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927.

### 2. Obesity

Plaintiff argues that the ALJ erred in failing to consider Plaintiff's obesity as required by Social Security Ruling 02-1p: "Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity." ECF No. 21 at 6. The Commissioner maintains that Plaintiff has not established that the ALJ's analysis was inadequate. ECF No. 22 at 12.

SSR 02-1p provides:

We may also find that obesity, by itself, is medically equivalent to a listed impairment (or, in the case of a child applying under title XVI, also functionally equivalent to the listings). For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. . . .

Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The

ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected. . . .

Individuals with obesity may have problems with the ability to sustain a function over time. . . . In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.

In essence, SSR 02-1p provides that the ALJ can determine that an individual is disabled based on the effect of her obesity, not simply the presence of obesity alone. *See Backman v. Colvin*, No. 4:12-cv-1897-TER, 2014 WL 798356, at *5 (D.S.C. Feb. 27, 2014) (citing SSR 02–1p, 67 Fed. Reg. 57859–02 (Sept. 12, 2002)).

Here, the ALJ addressed Plaintiff's obesity and found:

It has been suggested in the medical record that [Plaintiff] is obese. [Plaintiff] testified at the hearing that she weighs around 175 pounds, and has a height of 5'3". This would give her a Body Mass Index (BMI) if approximately 31. BMI is a measure of an individual's obesity. Indexes over 29 are considered in the obese range. There are no Listing criteria in Appendix 1 specific to the evaluation of obesity impairments. However, SSR 02-1p requires consideration of obesity in determining whether a claimant has medically determinable impairments that are severe, whether these impairments meet or equal any listing, and finally in determining the residual functioning capacity. An individual may have limitations in any of the exertional functions, postural functions, in her ability to manipulate objects, or to tolerate extreme heat, humidity, or hazards because of obesity. "[T]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." (SSR 02-012p) The effects of the claimant's obesity have been considered when determining a residual functional capacity for the claimant.

Tr. 22.

Initially, the court notes that Plaintiff does not assert that her Body Mass Index ("BMI") falls into one of the three recognized levels of obesity outlined in SSR 01-2p. Moreover, at the time of the hearing before the ALJ, no medical provider or nutritionist opined that Plaintiff was clinically obese based on Plaintiff's weight of 175 pounds. Furthermore, there is no medical evidence that indicates Plaintiff's weight limits her in any way. Additionally, other than stating her weight, Plaintiff did not testify that her weight was restricting her in any way or indicate that

her weight was an impairment. In fact, "obesity" was never mentioned during Plaintiff's hearing. Accordingly, the undersigned finds that the ALJ's consideration of the Plaintiff's obesity is thoroughly consistent with SSR 02–01p.

### 3.  Plaintiff's Work Status Characterization

Plaintiff argues that the ALJ erroneously mischaracterized Plaintiff's current work status and relies on the mischaracterization in denying Plaintiff's claim. Pl. Br. 8, ECF No. 21. Specifically, Plaintiff maintains that she was no longer working part-time at the time of the hearing because she had to quit her job in February of 2011 due to her impairments. *Id.* The Commissioner conceded that the ALJ made a factual error in finding that Plaintiff continued to work at McDonalds rather than quitting in 2011. Def. Br. 16, ECF No. 22. However, the Commissioner argues that this "factual error alone does not doom the ALJ's decision." *Id.* In any event, the Commissioner notes that Plaintiff worked after her alleged onset date of 2008. *Id.* The ALJ found Plaintiff "stated that she works part-time at McDonalds." Tr. 23. The ALJ does not mention Plaintiff's part time work again in his decision. However, in determining Plaintiff was unable to perform any PRW, the ALJ noted Plaintiff "*had* past relevant work as a cashier, food service worker, and grill cook." Tr. 26 (emphasis added). Therefore, this misstatement of fact is harmless error because it did not have an impact on the ALJ's evaluation of Plaintiff's claims. *Mickles v. Shalala,* 29 F.3d 918, 921 (4th Cir. 1994) (finding the ALJ's error harmless when the ALJ would have reached the same result notwithstanding an error in his analysis). Accordingly, there is no need to reverse or remand on this ground.

### 4.  Severity of Impairments

Plaintiff maintains that the ALJ discounted her impairments of headaches, edema, osteoarthritis, disc bulge and back pain, limb pain and numbness, hip pain, and asthma.  ECF No.

21 at 9-13. Additionally, Plaintiff maintains that the ALJ did not address her IQ testing score which "puts Plaintiff two points away from meeting a listing." *Id.* at 13. The Commissioner maintains that substantial evidence supports the ALJ's determination that Plaintiff's other medical impairments were not severe. ECF No. 22. Here, the ALJ found Plaintiff had the following severe impairments: "bilateral degenerative joint disease of the knees, degenerative disc disease of the lumbar spine, and asthma (20 CFR 404.1520(c) and 416.920(c))." Tr. 19.

A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms[.]" 20 C.F.R. §§ 404.1508, 416.908. It is the claimant's burden to prove that she suffers from a medically-severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Plaintiff maintains that the ALJ erred in failing to find her headaches were a severe impairment. ECF No. 21 at 9-10. Plaintiff argues that a CT scan from October 19, 2007 is objective evidence that supports her claim of migraines. *Id.*; ECF No. 23 at 3. The ALJ noted Plaintiff's "medically determinable physical impairments of migraine headaches, hypertension, hypokalemia, and edema," but found that "considered singly and in combination, [the impairments] do not cause more than minimal limitations on the claimant's ability to perform basic work activities and are, therefore, nonsevere." Tr. 20.

The October 19, 2007 CT scan indicates "minimal subtle change of decreased attenuation in the deep white matter. This can reflect microangiopathic changes and can be seen in the context of chronic migraine headaches." Tr. 828. Additionally, Plaintiff was assessed with a "classic migraine" on December 1, 2009 and prescribed toradol. Tr. 663. The ALJ is instructed to consider this objective medical evidence on remand when determining whether Plaintiff's headaches are a severe impairment affecting her ability to work. *See Evans v. Heckler,* 734 F.2d 1012, 1014 (4th Cir. 1984) (quotation omitted) (emphasis in original) (finding an impairment is not severe "only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); 20 C.F.R. §§ 404.1508, 416.908 (requiring that the severity of the impairment be established by "medically acceptable clinical and laboratory diagnostic techniques" rather than only by a statement of symptoms).

However, the undersigned finds that the ALJ's severity determinations concerning Plaintiff's edema, osteoarthritis, disc bulge and back pain, limb pain and numbness, hip pain, asthma, and IQ are supported by substantial evidence in the record. Specifically, the ALJ properly considered whether any limitations of these impairments would interfere with Plaintiff's ability to work in a sedentary job.

III.     Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, without additional analysis of the appropriate weight to give Plaintiff's treating physician's RFC opinion, this court cannot determine if the ALJ's decision is supported by substantial evidence. *See Cook v. Heckler,* 783 F.2d 1168, 1173–74 (4th Cir. 1986).

Additionally, on remand, the Commissioner is instructed to consider objective medical evidence concerning Plaintiff's migraines when determining whether Plaintiff's headaches are a severe impairment affecting her ability to work. Accordingly, Commissioner's decision is reversed and the case is remanded to the Commissioner for further administrative action as set forth above.

IT IS SO ORDERED.

February 18, 2015                                     Kaymani D. West
Florence, South Carolina                             United States Magistrate Judge